IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BILLY J. HATCHER,

             Plaintiff,

v.

COUNTY OF ALAMEDA, et al.,

             Defendants.

NO. C09-1650 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on March 28, 2011, on Defendants' motion for summary judgment. After carefully considering the parties' written and oral arguments, the Court now GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below.

**BACKGROUND**

This case concerns an incident that occurred on July 30, 2007, when Plaintiff Billy Hatcher was in custody at the Santa Rita Jail ("SRJ") in Dublin, California. According to evidence presented by Defendants and not disputed by Hatcher, a San Leandro police officer observed Hatcher asking people for spare change outside a liquor store on July 28, 2007. The officer ran a records check and found a no bail warrant for violation of California Penal Code sections 484(a) and 666. The officer arrested Hatcher and transported him to the San Leandro jail, and Hatcher was moved to SRJ the following day.

Hatcher remained in the intake, transfer, and release area of SRJ for nearly twenty-four hours – much longer than normal – because he did not comply with various aspects of the intake process. For example, he did not respond to the intake nurse's medical questions, did not consent to being searched, and refused to change from his street clothes into a jail-issued jumpsuit. During the time he was held at intake, he repeatedly asked for a hot meal

1  and was refused, with the explanation that hot meals were not available to inmates going
2  through initial processing.  Hatcher was classified as a maximum security inmate due to the
3  seriousness of offenses in his arrest history and past violent behavior.

4  After Hatcher eventually complied with directions and changed into his jumpsuit,
5  Defendant Deputy Jeremy Lucha then believed that Hatcher could be escorted to his assigned
6  housing unit without restraints.  It is here where the parties' accounts differ.  The parties do
7  not dispute that force was used by Defendants Lucha, Victor Galindo, James Russell, and
8  Victor Cabello, and that Defendant Matthew Neill shot a Taser at Hatcher.  However, the
9  parties do dispute some of the degree of force – for example, whether Hatcher was kicked in
10 the face – as well as whether Hatcher was cooperative or combative.  In his statements to an
11 officer completing an internal investigation, which is the only evidence submitted by Hatcher
12 as to his version of the facts, Hatcher contends that he obeyed all orders.[1]  Defendants'
13 declarations, on the other hand, describe Plaintiff as resisting all commands and efforts to
14 subdue him, including after being shot with a Taser once, and then a second time.  After the
15 incident, Hatcher was taken within minutes to the jail infirmary.

16 Under 42 U.S.C. § 1983, Hatcher alleges excessive force, deliberate indifference to
17 medical needs, and violation of his rights to privacy and equal protection.  He also asserts
18 supervisory and municipal liability based on allegations of pattern and practice.  In addition,
19 Hatcher alleges several state law claims, including assault and battery, intentional infliction
20 of emotional distress, violation of California Civil Code section 52.1, and negligence.

**LEGAL STANDARD**

23 Summary judgment is appropriate when there is no genuine dispute as to material
24 facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).
25 Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby,*
26 *Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is

---

[1] The Court addresses below Defendants' objections to consideration of this evidence.

2

sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250.

## DISCUSSION

### I.   Evidentiary Issues

The Court addresses the evidentiary issues raised by Defendants in their reply papers before turning to the parties' substantive arguments. First, Defendants observe that they marked some of the exhibits filed by Hatcher in opposition as "confidential." Defendants frame this observation as an evidentiary objection, but they cite no authority for the proposition that confidential documents must, by nature of their confidentiality, be excluded from evidence. To the contrary, the issue presented by the documents' "confidentiality" designations is whether they should have been filed in the public record. Because Hatcher's counsel appears to have violated the protective order in this case by not meeting and conferring with opposing counsel prior to filing the documents, the parties are ordered to meet and confer on whether any of the documents marked as "confidential" meet the

1    requirements for filing under sealed set forth in Civil Local Rule 79-5.² Any motion to seal
2    documents must be filed on or before **April 11, 2011**.³

3          Defendants also object that Hatcher's exhibits have not been properly authenticated.
4    The exhibits are all attached to the declaration of Gayla Libet, Hatcher's counsel, who
5    declares that the exhibits "are true and correct copies of original documents in the possession
6    of plaintiff's counsel in this case." Libet Decl. ¶ 4. This, of course, does not authenticate
7    that the documents are true and correct copies of what they purport to be. At argument,
8    Hatcher's counsel further explained that the majority of the exhibits were produced by
9    Defendants during discovery – a statement that was not but should have been included in her
10   declaration. Upon review, Exhibits 2, 3, 4, 5, 7, and 9 appear to be documents produced by
11   Defendants, as they bear Bates stamps beginning "AC," presumably for Alameda County.
12   Although Defendants' counsel stated at oral argument that Defendants contested the
13   authenticity of the documents, this is belied by Defendants' arguments on reply that many of
14   the exhibits should not be considered because Defendants designated them as "confidential."
15   Nor have Defendants argued that any of the documents attached to the Libet declaration are
16   not what they purport to be. Thus, although the Court recognizes that counsel's
17   representation that these documents were produced by Defendants during discovery was not
18   made under penalty of perjury, the Court nonetheless finds it proper to consider Exhibits 2, 3,
19   4, 5, 7, and 9. *See, e.g., Orr v. Bank of Am.*, 285 F.3d 764, 777 n.20 (9th Cir. 2002) (noting
20   that "documents produced by a party in discovery were deemed authentic when offered by
21   the party-opponent" in *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881,
22   889 n.12 (9th Cir. 1996)); *Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp.
23   2d 1116, 1123 n.10 (N.D. Cal. 2010) ("Since Defendants do not specify any reason to doubt
24   the authenticity of documents that they themselves produced in discovery, the Court finds the
25   documents properly authenticated under Fed. R. Evid. 901."); *but see Clark v. County of*

---

26   ²While violations of court orders are subject to sanctions, this Court opts not to begin
27   sanctions proceedings against Hatcher's counsel at this time.

28   ³As Defendants have not asked the Court to seal the documents in question
     immediately, the Court does not do so.

4

*Tulare*, --- F. Supp. 2d ---, 2010 WL 4791683, at *5 n.3 (E.D. Cal. 2010) (holding that "the attorney's declaration, that the documents were produced in discovery," was insufficient to establish authenticity). Counsel are forewarned, however, that such sloppiness in presenting evidence will not be tolerated at trial.

Defendants also raise hearsay objections to the most critical of the evidence on which Hatcher relies: his statements made to an officer conducting an internal investigation, the results of which are included as Exhibit 4 to the Libet declaration. The Court specifically asked Hatcher's counsel to respond to these objections at oral argument, but she failed to do so. In addition, Hatcher's counsel inexplicably relied exclusively on the statements contained in the investigative report, even though Hatcher's deposition had been taken. Nonetheless, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that a court could consider the contents of a diary, even though they were hearsay, because "[t]he contents of the diary are mere recitations of events within Fraser's personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways" – e.g., through direct testimony or as a recorded recollection). Because it appears that Hatcher's version of events could be admitted at trial through direct testimony, the Court will consider his statements as reflected in the investigative report.

## II.    Substantive Issues

### A.    Claims Against Defendant Vicente Clemente

After oral argument concluded and this matter was taken under submission, Hatcher's counsel asked to address the Court to make one additional statement: that Hatcher did not oppose granting summary judgment to Defendant Vicente Clemente, as he was not at the scene during the incident in question. With good cause appearing, Defendants' motion is therefore GRANTED as to Defendant Clemente.

5

### B. State Law Claims

Defendants' motion made several arguments on Hatcher's state law claims, including that Defendants are immune from liability for all such claims. Hatcher's opposition failed to respond to the immunity argument, and the Court construes that failure as a concession that judgment is appropriate on these claims. Accordingly, Defendants' motion is GRANTED as to all state law claims.

### C. Federal Claims

Hatcher asserts several constitutional violations under 42 U.S.C. § 1983: excessive force, deliberate indifference to medical needs, and violation of his rights to privacy and equal protection. He also contends that supervisory and municipal liability are appropriate in this case. The Court addresses each of these claims below.

#### 1. Privacy

First, Hatcher's opposition failed to include any argument on his privacy claim under § 1983, which the Court construes as abandoned. Thus, Defendants' motion is GRANTED as to this claim.

#### 2. Equal Protection

Next, as Defendants correctly observe, there is no evidence that any of Defendants' actions were based on Hatcher's race. The only statements relevant to this claim in Hatcher's opposition papers are that Plaintiff "was and is readily recognizable as an African-American," Opp'n at 8, and "Defendant deputy sheriffs were Caucasian," *id.* at 24. This is not sufficient evidence to establish an equal protection violation, and summary judgment is therefore GRANTED to Defendants.

#### 3. Deliberate Indifference to Medical Needs

Plaintiff's § 1983 claim also alleges deliberate indifference to medical needs under the Eighth Amendment. Plaintiff does not contest that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

6

1  Defendants argue that summary judgment is appropriate because Plaintiff cannot show
2  that Defendants ignored Plaintiff's medical needs. For example, Defendant Lucha declares
3  that:

> After Mr. Hatcher was physically subdued and handcuffed, it was apparent he had been injured. SRJ Prison Health Services Nurse Reyes was immediately summoned, and responded to the scene with a gurney within approximately ten minutes. SRJ Prison Health Services Nurse Reyes completed an assessment of Inmate Hatcher. Inmate Hatcher was then placed on a gurney and taken to the SRJ Infirmary where he was provided additional care by PHS Nurse Azucenas.

Lucha Decl. ¶ 15.

Plaintiff counters this evidence by citing to pages from Defendants' internal investigation in which Nurse Reyes states that he never saw Plaintiff on the evening in question, and Nurse Azucenas states that he does not recall seeing Plaintiff. Ex. 4 to Libet Decl. at AC0117-18. However, although Nurses Reyes and Azucenas told the investigators that they did not treat or did not recall treating Plaintiff that evening, the medical records from Prison Health Services include notes from both nurses. Ex. 7 to Libet Decl. at AC0302. Nurse Reyes made an entry at 10:55, minutes after the incident occurred. *Id.* Nurse Azucenas made an entry at 11:15. *Id.* The record indicates that Plaintiff was monitored throughout the evening and the next day, and that he was seen by Dr. G.A. Wilson early the next morning. *Id.* at AC0302-07. Hatcher complains that he was not immediately sent to an outside emergency room for treatment, but that is not dispositive; the record clearly establishes, without dispute, that the Defendant deputies sought to provide Hatcher with immediate medical treatment for his injuries, and no reasonable juror could find otherwise. Consequently, Defendants' motion for summary judgment is GRANTED as to Hatcher's claim based on deliberate indifference to medical needs.

### 4. Excessive Force

Hatcher also alleges that his constitutional rights were violated by Defendants' use of excessive force. Although Hatcher's opposition brief cited cases analyzing this issue under the Fourth Amendment, Hatcher's counsel conceded at oral argument that the Eighth

7

1 Amendment governs this claim.  Thus, the Court's "core judicial inquiry is . . . whether force
2 was applied in a good-faith effort to maintain or restore discipline, or maliciously and
3 sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

4 Because this is Defendants' motion for summary judgment, all disputed facts must be
5 construed in a light most favorable to Hatcher.  Under Hatcher's version of events, Ex. 4 to
6 Libet Decl. at AC0104-07, he said to himself out loud, "That asshole could have gave us a
7 hot tray."  When Defendant Lucha heard that statement and told Hatcher not to disrespect
8 staff, Hatcher apologized.  Lucha then grabbed Hatcher's arm and told him to get on the wall,
9 and Hatcher did as directed.  He subsequently complied with Lucha's direction to put his
10 hands behind his back, at which time he was handcuffed.  Hatcher complied with directions
11 and got on the ground, lying face down, at which time Lucha placed Hatcher in a choke hold
12 from behind and Galindo, who had run over from the other side of the yard, knelt on
13 Hatcher's back and used his other knee to strike Hatcher repeatedly.[4]  Hatcher did not resist
14 the deputies but did turn around to try and get some air.  He saw other deputies running to the
15 area and then saw a black boot kick him in the face, causing bleeding.  He estimated that
16 fifteen to twenty deputies jumped on top of him and punched him.

17 A deputy then picked Hatcher up and sat him in the middle of the walkway between
18 housing units, where he sat dazed from being kicked in the head.  He heard a deputy say
19 "shoot him," and then he felt something, presumably a Taser, that caused him to fall to the
20 ground.  A deputy snatched Hatcher by the leg, and his jail pants came off.  The deputies
21 then got Hatcher back on the ground and started to punch him again, before pulling Hatcher
22 back to his feet.  While Hatcher was asking why the deputies were doing this to him, he felt
23 another shot in his elbow, followed by a third shot in his hip.  Hatcher was then dragged
24 along the concrete walkway and received several abrasions to his knee and legs.

25 If Hatcher was truly as obedient as he contends, then the above force would not have
26 been necessary to maintain or restore discipline, and this would have been clear to a

---

[4]Hatcher later gave a conflicting version of events: that, after he was handcuffed, Lucha placed him in a choke hold while still standing and then Lucha and Galindo took him to the ground.  This difference is not material to the outcome of this motion.

8

reasonable officer. Thus, there is a triable issue as to whether the use of force was constitutional under the Eighth Amendment, and it would be improper to grant qualified immunity to Defendants. Indeed, Defendants' arguments are premised on their conclusion that Hatcher "violently resisted the Defendants' efforts to control him." Reply at 10. However, at summary judgment, with the facts viewed in a light most favorable to Hatcher, the Court cannot conclude that Hatcher "violently resisted." Nor can Hatcher's admitted use of the word "asshole" justify the force that Hatcher contends was used against him, even under the deferential Eighth Amendment standard. Accordingly, summary judgment as to the remaining individual Defendants is DENIED as to Hatcher's excessive force claim under § 1983.

### 5. Municipal and Supervisory Liability

Finally, Hatcher argues that he is "entitled to recover damages" under § 1983 against the County of Alameda and its sheriff, Gregory J. Ahern, because he "can demonstrate by a preponderance of the evidence that said defendants adhered to a policy, practice, or custom that caused plaintiff to be deprived of his constitutional rights." Opp'n at 8. However, the opposition asserts only in the most conclusory fashion that: "Callous and deliberate disregard for plaintiff was shown by several COUNTY Santa Rita Jail employees in positions superior to named defendant deputy sheriffs, who all denied his Inmate Grievances regarding the sheriffs' assault and battery upon him and his resulting injuries. This is common practice in Santa Rita Jail." *Id.* Nowhere does Hatcher cite to any evidence of this purported "common practice." There is evidence that Hatcher filed inmate grievances that were denied, but Hatcher fails to explain why this is evidence of a common practice or would otherwise be sufficient to give rise to municipal liability under § 1983.[5]

In addition, Defendants correctly observe that, "[u]nder Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability. A

---

[5] Nor did Hatcher include citations to this evidence in his amended opposition, despite the Court's instructions to "file an amended opposition brief that includes specific citations to the record, including exhibit and page numbers," after Hatcher's original opposition contained no citations to the record. Feb. 24, 2011 Order at 1.

9

supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citations omitted). Hatcher has presented no evidence that Sheriff Ahern was personally involved in the incident, nor has he provided evidence that the alleged constitutional violation had any causal connection with any of Ahern's actions.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to the § 1983 claims asserted against Defendants Ahern and the County of Alameda.

## CONCLUSION

In sum, for the reasons discussed above, Defendants' motion for summary judgment is DENIED as to the excessive force claim under 42 U.S.C. § 1983 against Defendants Lucha, Russell, Galindo, Cabello, and Neill. The motion is GRANTED as to all other claims.

Counsel are reminded that any motion to seal any portion of the exhibits to the Libet declaration pursuant to Civil Local Rule 79-5 must be filed on or before **April 11, 2011.** Counsel are further reminded that General Order No. 62 governs the electronic filing of documents under seal.

**IT IS SO ORDERED.**

Dated: 03/31/11

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT