IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BILLY J. HATCHER,

               Plaintiff,

v.

COUNTY OF ALAMEDA,

               Defendant.

NO. C09-01650 TEH

ORDER ON PLAINTIFF'S REQUEST FOR EVIDENTIARY HEARING

This matter arises from a letter, received by the Court after the June 16, 2011 jury verdict in this case and dated June 21, 2011, from a member of the jury. The letter was disclosed to the parties on June 30, 2011, by order of this Court. On July 13, 2011, the Plaintiff filed a response to the June 30 order, requesting an evidentiary hearing to determine whether the jury deliberations in this case may have been tainted by misconduct, and whether the Plaintiff was thereby denied his right to due process. For the reasons detailed below, the Plaintiff's request for an evidentiary hearing is DENIED.

**BACKGROUND**

This case was decided after a six-day jury trial, which took place between June 7, 2011 and June 16, 2011. Prior to jury selection, this court invited the members of the venire to disclose any potential hardship they might have which would impair their ability to serve on the jury, and, when there were none, informed the venire of the subject matter of the case. The Court disclosed that the Plaintiff was incarcerated during the events that gave rise to his claim before conducting the Court's voir dire and allowing the parties time to conduct their own voir dire.

Both parties were given the opportunity to approach the bench and request that prospective jurors be excused for cause, and all seven prospective jurors ultimately

1  empaneled were asked, by the court, whether they could serve as impartial jurors.  All seven
2  said that they could, and the jurors were sworn and given their instructions, including an
3  instruction to submit written questions to the Court, should they require clarification of any
4  kind.

5       At the conclusion of the trial, the jurors were instructed by the Court as to the law, and
6  sent out to deliberate.  They returned their verdict in favor of the Defendant that same day,
7  and confirmed that the verdict was accurately recorded before the proceeding drew to a close
8  and the jurors were excused.

9       The letter received by the Court following the verdict in this case is dated five days
10 after the jury returned from their deliberations and signed by a member of the jury.  The
11 letter, filed by this Court under seal, contains statements regarding bias by other jurors,
12 difficulty participating in the discussion, confusion about the rules governing the jury's
13 decision, and inclusion, by one juror, of information not presented in evidence, about which
14 this juror (and possibly others) may have speculated during their deliberation.

15      One copy of the letter was provided to each of the parties, and the Court has delayed
16 entering judgment in this matter in order that the parties might be afforded an opportunity to
17 review the letter and submit briefing regarding what further action, if any, is warranted in this
18 case.  As noted above, the Plaintiff has requested an evidentiary hearing on the contents of
19 the letter, which the Defendant vigorously opposes.

20      Plaintiff argues, in his request, that the letter reveals juror misconduct, in the form of
21 bias against the Plaintiff, introduction of extraneous prejudicial information into the
22 deliberations, and failure, by the author of the letter, to meaningfully participate in the
23 deliberation. The Plaintiff argues that this misconduct deprived him of his right to due
24 process, and that the law requires a post-verdict inquiry into the jury's deliberations in order
25 to determine whether the alleged misconduct did, in fact, occur.

26      Defendant responds that the letter is barred as hearsay, and, furthermore, is barred for
27 consideration by Fed. R. Evid. 606(b), which prohibits juror testimony regarding a verdict,
28 and further disallows consideration of any statement from a juror which, as testimony, would

2

be precluded by 606(b). Though there are three enumerated exceptions to the 606(b) rule, the contents of the letter, according to the Defendant, fails to fall into any of those exceptions, and therefore must be excluded from this Court's consideration.

**LEGAL STANDARD**

"The near-universal and firmly established common law rule in the United States flatly prohibited the admission of juror testimony to impeach a verdict." *Tanner v. United States*, 483 U.S. 107, 107 (1987); *McDonald v. Pless*, 238 U.S. 264, 267 (1915). Federal Rule of Evidence 606(b) is an embodiment of this longstanding policy, strongly disfavoring the admission of juror testimony to impeach a verdict. It states,

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Rule 606(b) offers a standard governing not only testimony, but any statement made by a juror after the verdict has been reached–including affidavits and also less formal writings, such as letters. When such evidence is submitted, the Court must review the writing under the same standard as would be applied were the statement spoken live, in court. This means that "the district court must examine this material to decide whether it falls within the categories of admissible juror testimony permitted by Rule 606(b). Rule 606(b) permits testimony only on the questions of 'whether extraneous prejudicial information was improperly brought to the jury's attention' and 'whether any outside influence was improperly brought to bear on any juror.'" *Hard v. Burlington Northern R. Co.,* 870 F.2d 1454, 1461 (9th Cir. 1989).

Within the exception, jurors are limited to testifying as to the existence and nature of extraneous evidence–testimony regarding the impact of such information on any juror or on

3

the jury as a whole is prohibited. *Abatino v. United States*, 750 F.2d 1442, 1446 (9th Cir.1985) ("[J]urors may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts.") (quoting *United States v. Bagnariol*, 665 F.2d 877, 884-85 (9th Cir.1981), cert. denied, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982)).

In deciding whether an evidentiary hearing will be required to determine the necessity of retrial, the court must consider only that portion of the affidavit or testimony which would be admissible under Rule 606(b). *Hard*, 870 F.2d at 1461. To that end, "[w]e may not consider jurors' testimony addressing the jury's deliberative process unless the testimony 'bear[s] on extraneous influences on the deliberation.'" *Harrison v. Gillespie*, 640 F.3d 888, 896 n.4 (9th Cir. 2011) (quoting *United States v. Pimentel*, 654 F.2d 538, 542 (9th Cir.1981)).

Testimony regarding the motivation of a juror or jury in reaching a verdict is barred under 606(b): "Testimony of a juror concerning the motives of individual jurors and conduct during deliberation is not admissible. Juror testimony is admissible only concerning facts bearing on extraneous influences on the deliberation, in the sense of overt acts of jury tampering." *Pimentel*, 654 F.2d at 542.

Information about the personal biases or prejudices of jurors, received after the verdict, is distinguished from the evidence of external influence capable of requiring reexamination of a jury verdict: "The type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room. Voir dire questioning is the proper method of uncovering prejudicial character traits of potential jurors." *Hard*, 870 F.2d at 1461.

Voir dire is not only the proper method of uncovering bias in the jury pool, it is also the proper means of gleaning information about jurors' individual experiences and areas of expertise which might bear on their ability to fairly deliberate the case at bar. As "it is expected that jurors will bring their life experiences to bear on the facts of a case," voir dire

4

offers an opportunity for each party to remove individuals from the jury whose personal experience might lend them excessive influence over the deliberations. *Hard*, 870 F.2d at 1462, *Grotemeyer v. Hickman*, 393 F.3d 871, 879 (9th Cir. 2004).

Though jurors are expected to bring their own personal experiences with them into the courtroom, and may rely on their personal knowledge or past experiences when hearing the evidence, deliberating, and deciding their verdict, "the juror's personal knowledge constitutes extraneous prejudicial information where the juror has personal knowledge regarding the parties or issues involved in the litigation." *Hard v. Burlington N. R.R.*, 812 F.2d 482, 486 (9th Cir.1987)

A juror's misunderstanding of the court's instructions does not constitute extraneous evidence and is not eligible for consideration under 606(b), even where testimony would be limited to objective manifestations of this misunderstanding, and not directly involve discussion of the jurors' mental processes. "After a verdict is returned a juror will not be heard to impeach the verdict when his testimony concerns his misunderstanding of the court's instructions," even where a juror would be able to "testify, objectively, of incidents tending to indicate that other jurors may have misunderstood the court's instructions on the elements of the offense," as "the inquiry would still concern the mental processes by which the jurors reached their decision and would therefore be barred by the nonimpeachment rule." *United States v. Stacey*, 475 F.2d 1119, 1121 (9th Cir. 1973).

Should there be any portion of a juror's statement to the court which *is* eligible for consideration, the court must then determine whether the information contained in the juror's statement is sufficient to justify an evidentiary hearing. "An evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside the verdict. Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different. Unless the affidavits on their face support this conclusion, no evidentiary hearing is required. Unless such a showing is made at the evidentiary hearing, no new trial is required." *Hard*, 870 F.2d at 1461.

5

**DISCUSSION**

Plaintiff requests an evidentiary hearing on the basis of three areas of information conveyed in the juror's letter: first, that the jury was biased against the Plaintiff because of his status as an inmate, second, that the jury considered extraneous information in the form of forensic information not presented in evidence but discussed by jurors during deliberation, and, third, that the author of the letter failed or refused to participate in the deliberative process.

With regards to the first allegation, the statement contained in the letter alleging bias refers to a general bias against the Plaintiff because he was formerly a prisoner. The letter states that the decision of the jury (here referred to only as a group–there is no allegation of particular bias on the part of any one juror) was based on the fact that the Plaintiff was a prisoner, and not on the merits of the case.

This is a statement about the jury's decisional basis, alleging an ulterior motive for the verdict in this case. It contains no allegation of extraneous information (as the fact that Plaintiff was a prisoner was central to the factual scenario underlying his claim, and was, therefore, properly before the jury). Because the letter offers only information about jury motives and personal bias, it is not exempted from Rule 606(b). *See Pimentel*, 654 F.2d at 542; *Hard*, 870 F.2d at 1461-1462; *Grotemeyer*, 393 F.3d at 879. Accordingly, the court may not consider it in determining whether an evidentiary hearing is required. *Hard*, 870 F.2d at 1461.

With regards to the second basis for the Plaintiff's request, which alleges that the jury improperly considered forensic information not in evidence, the portion of the letter underlying this claim is quite brief–a one-sentence reference to a juror who, during deliberation, put forth the idea that the Plaintiff had taken a blood-thinning medication, and that this accounted for the quantity of blood visible in the pictures presented in evidence. There is no further information regarding the manner in which this statement was made, the authoritativeness of the speaker, or the context in which this information was introduced into the discussion.

6

On the basis of the information presented in the letter, it is impossible to tell whether the statement about blood thinners described was true extraneous information, or merely a speculation based on one juror's personal knowledge or experience. Generally speaking, information offered by a juror during deliberation constitutes an extraneous, prejudicial influence of the sort exempted from 606(b) when it involves speculation about the consequences of a conviction (*see Bayramoglu v. Estelle*, 806 F.2d 880, 887-888 (9th Cir.1986) (discussion of a defendant's potential sentence is impermissible extrinsic evidence); *Silva v. Woodford*, 279 F.3d 825, 834 (9th Cir.2002) (discussion of possible parole constitutes impermissible extrinsic evidence)), involves direct personal knowledge of the parties, facts or issues involved in the matter before the jury (*Hard*, 812 F.2d at 486), or information gleaned outside of the courtroom (whether through an outside party or independent experimentation, or similar extra-judicial source) and then brought into the jury room to taint deliberation (*see Grotemeyer*, 393 F.3d at 879; *United States v. Navarro-Garcia*, 926 F.2d 818, 821-22 (9th Cir.1991)).

On the basis of the information presented to the Court, the statement regarding blood thinners cannot be said to be a clear introduction of extraneous evidence. The statement sounds as though it very well may have been speculation based on the personal experience of the speaker, and not the kind of extraneous influence contemplated by 606(b). As such, it is not eligible for consideration by the Court. Furthermore, even if the court were to consider it as extraneous information subject to the 606(b) exception, the standard in a case such as this, where the losing party in a civil matter seeks to impeach the verdict, requires a showing, by a preponderance of the evidence, that the outcome of the case would have been different but for the extraneous influence on the jury. *Hard*, 870 F.2d at 1461. If the materials before the court do not, on their face, require setting aside the verdict, then an evidentiary hearing is not justified. *Id.* The mention of blood thinners, even if eligible for consideration by the court, does not rise to this standard, and therefore would not be sufficient to justify an evidentiary hearing.

7

Finally, regarding the Plaintiff's third claim, which is the claim involving failure to deliberate by the author of the letter. This claim arises from the statements, contained in the letter, regarding the juror's own participation in the process. There are two areas in which this subject is addressed, the first being the juror's statement that she did not understand the rules governing how a verdict is rendered, and her misunderstanding led her to capitulate in a verdict with which she did not agree. The second area is the portion of the letter where the juror states she was unable to state her opinion, because of both shock at the positions of other jurors and difficulties arising from her status as a non-native English speaker.

The Plaintiff characterizes these statements as evidencing a refusal to deliberate on the part of the juror, and argues that this constitutes misconduct and resultant denial of due process. This characterization is somewhat problematic, as the juror does not describe a *refusal* to engage in the process, but, at the very most, an *inability*. Her failure to participate, if any, being unintentional, it cannot be construed as a refusal, which requires deliberate action rather than mere inability. However, moving beyond this mischaracterization, the statements on which this claim rests do not fall into any exception to 606(b). The juror is describing her personal experience in deliberation, and, beyond that, her own misunderstanding of the Court's instructions–both of which are barred from consideration by Rule 606(b). *See Bagnariol*, 665 F.2d at 884-85*; Harrison*, 640 F.3d at 896 n.4; *Stacey*, 475 F.2d at 1121. As the court may not consider this portion of the juror's statement, it cannot serve to require an evidentiary hearing in this case.

**CONCLUSION**

For the reasons set forth above, the request for an evidentiary hearing is DENIED.

**IT IS SO ORDERED.**

Dated:  10/5/2011

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

8